ESTELLE THURSTON V. THE STATE.

No. 23404. Delivered June 19, 1946.
Rehearing Denied October 16, 1946.

The opinion states the case.

*W. J. Baldwin,* of Beaumont, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Our State's Attorney, Hon. Ernest S. Goens, has filed a comprehensive brief herein, setting forth the facts clearly and fairly, and we adopt the same as our conclusions herein, as follows:

"Appellant was convicted in Criminal District Court of Jefferson County, Texas, of the offense of robbery by assault and sentenced to five years in the penitentiary.

"On the evening of January 4, 1946, Willie Royal, the assaulted party, had gone to Irene's Beer Parlor in the City of Beaumont. Some time after he had entered the place Estelle Thurston, the appellant, Marvin Immel, Walter Meadows and Nell Vitanza came in and were seated at a table, drinking beer.

At this time Royal was playing the marble machine and played a couple of games; that he, Royal, bought a beer and that Meadows invited him to join his party over at their table, and got a chair for him. They had one or two beers, Royal at least paying for one, if not both rounds of beer. While he was seated there at the table one of the women asked Royal if he didn't want to have a date. He told her no, that he had to go to his room. The girl that asked the question was Nell. Meadows evidently heard what she said and told her that he was boss and that she would do as he said. Some character of argument ensued between Nell and Walter, and while that was going on Immel remarked that if they were going to be that way he was going to leave, and did leave. Some time shortly thereafter Estelle, Nell and Meadows left. Royal remained there. Irene testified that as they were leaving and had invited Royal to go with them, that she was standing back of him and pulled his coat and told him not to go. Some twenty or thirty minutes after this group had left Irene's place Royal got up and went out, and when he got on the outside Estelle (appellant) and Nell grabbed him and said 'Come on.' Somebody immediately hit him. He was knocked out and when he came to he was lying in a yard at 1404 Wall Street, which, according to the evidence, was around the corner from the beer parlor. He testified that there was high shrubbery around this place; that when he came to Walter Meadows was holding to his foot, and he gave a kick; that he had his hand in his left pocket because his purse was there; that Meadows kicked him in the face and something hit him in the eye and he went out again; that his purse containing between ninety and ninety-five dollars was taken; and when he came to again Estelle, Nell and Walter Meadows were gone. He got up and went back around to Irene's place and across the railroad tracks to a filling station and called the police. The officers came and Royal described the people who had robbed him. A search ensued and the officers, being unable to locate the parties at a house occupied by Immel and Estelle, made a further search and finally located said four parties at the Ritz Motel. Immel and Estelle were occupying one room and Walter Meadows and Nell another room at said motel. The next morning the officers made a careful inspection and investigation of the premises where Royal was robbed. There they found the ground all scarred up, where there had been a scuffle and also found a wooden latch off a woman's purse. They also found the purse to fit the latch. The purse was found inside appellant's and Immel's house. The purse and latch fit perfectly. Proof was offered conclusively that this purse had belonged to appel-

lant, but it was contended that she had previously given the purse to Nell.

"The court correctly charged the jury on the law of principals and also on alibi. In fact, the charge as drawn was not objected or excepted to by appellant. She did, however, request the court to instruct the jury to return a verdict of not guilty, which, of course, was by the court overruled.

"Appellant brings forward two bills of exception, bill No. 2 being as to the court's refusal to instruct the not-guilty verdict. We respectfully submit that the court did not err in this particular, since there was sufficient evidence to support the jury verdict of guilty.

"By bill of exception No. 1 appellant complains at the action of the trial court in permitting the State's Attorney to elicit from appellant on cross-examination the fact that she was previously married to Henry Thurston and lived with him for sixteen years, lacking a month and four days, and, further that she was then divorced. She filed the suit for divorce. He cross-filed and was granted the divorce. She further testified that she did not write him a letter and state that she was not a fit person to have custody of the children. 'I let my mother-in-law and father-in-law keep them. The court gave them the children but I was willing.' The court qualifies this bill of exception and sets out in Q. & A. form the original testimony of appellant as developed by her counsel on direct examination, wherein he showed that appellant was married to one Immel on the day preceding the trial and proved that she and Henry Thurston had been separated for a long time but that they had been married sixteen years before the divorce was granted, and proved by her that she had never been indicted for any criminal offense. Thereupon the county attorney cross-examined the defendant, asked her who filed the suit, to whom the divorce was granted. The county attorney then asked, 'I ask you whether or not you wrote him a letter and stated in that letter that you were not a fit person to have custody of those children.' I answer, 'No, I did not.' Appellant then, through counsel, interposed the following objection and none other and in the following language and none other: 'We object to that. He is going into the divorce trial,' and no other objection was interposed by the defendant at such time, and thereupon the court, in ruling upon said objection, made the following statement, 'I don't think it is admissible on that theory. Insofar as it affects the custody of the children, they were injected into the case by the de-

fendant. I will let him go into it.' And thereupon, after the ruling of the court, defendant made no other objection and took no exception to the ruling of the court."

In accord with the above reasoning, the judgment of the trial court will be affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

Appellant is quite insistent that the evidence does not support the conviction. This appears to be based upon, (1) the assumption that Royal was drunk to the point that he did not know how he got from the Beer Parlor to the place where his money was actually taken from him. The evidence would authorize the jury in finding that as he came out of the door of the Beer Parlor, or immediately after he came out, he was struck on the head and rendered unconscious, and never regained his senses until his bill fold and money was being taken from his pocket: (2) Royal testified that Meadows took his money and that this appellant did not. Appellant was not tried upon the theory that she actually took the billfold and money from Royal's pocket, but upon the theory that she was a principal, in that she was present when Meadows took it, and knowing his unlawful intent, aided and encouraged him in such manner as made her a principal. Appellant testified that when she left the Beer Parlor Royal was still there, and that she and her husband immediately went away and did not see Royal any more, and that appellant was not present if he was robbed, and had nothing to do with it. The evidence of a State's witness, Daugherty, was sharply to the contrary, as follows: "I went to the door to look for my nephew and Estelle Thurston and Nell were standing there and they asked me to tell the man with the flopped down green hat on to come on and let's go. They were standing on the front porch when they said that. I told the man with the flopped down hat what they said and he went on with them, I guess. He came back in there later all beat up. His nose was bloody. I saw him. The two women were standing right by the door on the porch when they told me to tell him to come on. Estelle was one of the women. She told me to tell the man with the green hat on to come on out. * * * Estelle and Nell both told me to go get him, Willie Royal. I told him and he left. He came back about fifteen minutes afterwards. * * *"

We have again carefully reviewed the evidence, and have no doubt that it supports the conviction.

The motion for rehearing is overruled.